UNITED STATED DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X Case No.:
LINDA HORAN and JOSHUA JOFFE

                        Plaintiffs          **COMPLAINT**

           v.                         Jury Trial is Requested

DAMARIS VIEIRA a/k/a DAMARIS
RODRIGUEZ VIEIRA and REMY D. LEHNER

                         Defendants.
------------------------------------------------------------X

      The Plaintiffs LINDA HORAN and JOSHUA JOFFE, by their attorney,

Michael A. Markowitz, P.C., as and for their complaint against the defendants

DAMARIS VIEIRA a/k/a DAMARIS RODRIGUEZ VIEIRA and REMY D.

LEHNER, allege the following:

## PARTIES

1.    The Plaintiff LINDA HORAN ("Horan") was and is an individual domiciled

     in the County of Nassau, State of New York, residing at 14 Honeysuckle

     Road, Levittown, New York 11756.

2.    The Plaintiff JOSHUA JOFFE ("Joffe") was and is an individual domiciled in

     the County of Nassau, State of New York, residing at 181 Briarwood

     Crossing, Lawrence, New York 11559.

3.    Upon information and belief, the defendant DAMARIS VIEIRA, also known

as DAMARIS RODRIGUEZ VIEIRA ("Vieira") was and is an individual domiciled in the County of Hillsborough, State of Florida, residing at 1505 East Mulberry Drive, Tampa, Florida 33604.

4. Upon information and belief, the defendant REMY D. LEHNER ("Lehner") was and is an individual domiciled in the County of Cumberland, State of Pennsylvania, residing at 2980 Meridian Way, Apt. 6, Mechanicsburg, Pennsylvania 17055.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a). No Defendant is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper within this District, pursuant to 28 USC 1391, because a substantial part of the events or omissions giving rise to the claim occurred within this District in that, as hereinafter alleged, the Defendants created, operated, maintained financial accounts, improperly distributed principal, and failed to file an accounting for an irrevocable trust pursuant to court order, all in the County of Nassau, State of New York.

## BACKGROUND

7. On March 15, 2000, Lehner created a New York irrevocable trust for the

2

benefit of her son, Andrew R. Gill ("Gill").  The name of the trust was "The Andrew R. Gill Irrevocable Trust" (hereinafter referred to as the "Trust").  A copy of the Trust is annexed hereto as Exhibit "1".

8.    Pursuant to Trust Article VI, the trustees agreed to directly pay Gill, or pay a third party for his benefit, the income or principal of the Trust, at such time or times and in such amounts, as the trustees, in their sole and absolute discretion, may deem advisable.

9.    Pursuant to Trust Article VI(D), "Upon the death of [Gill] prior to attaining the age of forty-two (42) years, the Trustees shall distribute the then remaining principal and any undistributed income of this trust to his then living issue, in equal shares, per stirpes, and, in default of such issue, as follows: (1) One-third (1/3) to the Settlor's friend, Joshua Joffe, or, if he shall not then be living, to his then living issue, in equal shares, per stirpes. (2) One-third (1/3) to the Settlor's cousin, Damaris Rodriguez-Viera, or, if she shall not then be living, to the Settlor's cousin, Daniel Rodriguez, or if he shall not then be living, to his then living issue, in equal shares, per stirpes. (3) One-third (1/3) to the Settlor's friend, Linda Horan, or if she shall not then be living, to her then living issue, in equal shares, per stirpes."

10.   As set forth in the Trust, Lehner requested and Horan accepted and agreed to be the trustee.

3

11. During the period from March 15, 2000 through and including April 11, 2004, Horan was the trustee for the Trust.

12. On April 11, 2004, Horan resigned as the trustee for the Trust. Immediately prior to her resignation, Horan accounted and reported that the principal of the Trust totaled $242,395.30.

13. In particular, the Trust had financial accounts in New York in the following amounts (the "Financial Accounts"):

| Account Name | Acct. No. | Balance Date | Amount |
|---|---|---|---|
| Bank of New York (Checking) | 690-3935365 | March 9, 2004 | $3,868.59 |
| Bank of New York (Savings) | 697-5283893 | March 9, 2004 | $11,099.88 |
| Fidelity Growth & Income Fund | 0478-00689939940 | December 31, 2003 | $161,152.98 |
| Capital One certificate of deposit | 1010897379 | Matures 10/11/2005 | $16,000 |
| Astoria Federal Savings | 9000929207 | Matures 02/10/2008 | $50,273.85 |
| | | Total: | $242,395.30 |

14. Upon Horan's resignation, Joffe became the successor trustee pursuant to the Trust. Joffe was the successor trustee for several weeks until his resignation.

15. On November 26, 2004 Lehner appointed and Vieira appeared in New York

4

and accepted and became the trustee for the Trust.

16.  At the time Lehner appointed Vieira as trustee, Gill was over the age of 18 years.

17.  Upon becoming the trustee, Vieira caused the Financial Accounts (with the exception of the Capital One account) to be placed in her name as the trustee for the Trust, while having Lehner's New York business and/or home to be the mailing address.

18.  At all times while acting as trustee, and with the exception of payment of the Capital One account to the plaintiffs in 2017 (as set forth below), Vieira caused to be paid most of the trust income and principal directly to Lehner, or, on behalf of Lehner, to a third-party creditor.

19.  Upon information and belief, approximately 10% of the money from the Financial Accounts was delivered to Gill, or on behalf of Gill, pursuant to the terms and conditions of the Trust.

20.  All of Vieira's payments to Lehner, or to a third-party creditor on behalf of Lehner, was made without an order from the New York State Surrogate's Court, or a court having jurisdiction over the Trust.

21.  Although he was over the age of 18 years, Vieira never delivered a check directly to Gill.  Lehner maintained possession of the Trust's checkbook, bank

statements, and ledger sheets.  Vieira either delivered checks directly to Lehner, or delivered a form letter to allow Lehner to withdraw money from the Financial Accounts (other than the Capital One account).

22. In particular, on February 13 2009, Vieira withdrew, $80,000 from Chase Bank (formerly Bank of New York) account 697-5283893.  From the $80,000, Vieira caused Chase Bank to issue a $75,000 bank check paid to the order of "R Kenneth Barnard Esq. as Trustee."  This payment was for a personal debt or obligation owed by Lehner and not by Gill or the Trust.  The remaining $5,000 was paid to Gill pursuant to the Trust.

23. On April 6, 2009, Vieira caused, or allowed Lehner to withdraw and pay to herself, $48,000 from Chase Bank account 697-5283893.

24. In December 2009, Vieira caused, or allowed Lehner to withdraw (with penalty), $27,932.81 and close the Astoria Federal Savings account.  Vieira allowed Lehner to withdraw $154,260.18 and close the Fidelity Growth & Income Fund.

25. On May 12, 2010, Gill died in Florida at the age of 24 years.  At the time of his death, Gill was without any living issue.

26. On the same day that Gill died, Vieira caused, or allowed Lehner to withdraw and pay to herself, $18,816.81 from Chase Bank account 697-5283893.

27.  On February 23, 2017, and pursuant to the terms of the Trust, Vieira caused to be distributed $19,775.42 from the Capital One account in three (3) equal checks to each beneficiary (Horan, Joffe, and Vieira) of $6,591.81.

28.  Upon distribution from the Capital One account, Vieira, by her attorney and agent, declared "termination" of the Trust without providing an accounting.

29.  Upon receipt of distribution, Joffe and Horan petitioned the New York State Surrogate's Court for Nassau County for a final accounting.  On September 6, 2017, the Hon. Margaret C. Reilly, issued an order directing Vieira to "file an account as trustee and petition for the judicial settlement of the account.…" A copy of the order is annexed hereto as Exhibit "2".

30.  On November 6, 2017, the Hon. Margaret C. Reilly issued an order to extend Vieira's time to prepare and file an accounting for the Trust to January 4, 2018.  A copy of the order is annexed hereto as Exhibit "3".

31.  That despite orders from the Surrogate's Court, Vieira failed and was unable to file an accounting for the Trust.

## FIRST COUNT

(Against Lehner for Fraud and Vieira for Aiding and Abetting Fraud)

32.  Plaintiff realleges and incorporate by reference all previous paragraphs as if they were fully set forth against herein.

33. Pursuant to Trust Article I, Lehner declared the Trust "irrevocable" and represented that she "shall not have any power at any time to alter, amend, revise, modify, revoke or terminate any of the provisions of [the Trust]." However, when Lehner appointed Vieira as the trustee, she wanted the money in the irrevocable trust to return to her instead of being used for the intended beneficiaries of the Trust.

34. When Lehner made Vieira the trustee, Lehner devised a fraudulent plan and scheme to avoid the terms of the Trust so that the majority of the Financial Accounts was paid to Lehner, or to a third-party creditor on behalf of Lehner.

35. Despite understanding the basic obligations of being a trustee, Vieira aided and abetted Lehner's fraudulent plan and scheme by allowing Lehner to maintain possession of the Trust's checkbook, bank statements, and ledger sheets, by delivering checks directly to Lehner instead of Gill, or delivering form letters to allow Lehner to withdraw money from the Financial Accounts.

36. While Lehner and Vieira were dissipating the Financial Accounts, they were representing that money was being used on behalf of Gill when, in fact, most of the money from the Financial Accounts, was paid to Lehner, or used to pay a third-party creditor on behalf of Lehner.

37. That Lehner and Vieira, intentionally concealed facts from the Trust

8

beneficiaries by never creating and delivering an accounting pursuant to Trust Article X, by filing tax returns without disclosing purported distributions to Gill, by failing to file any tax returns subsequent to Gill's death, by withholding information from Horan and Joffe concerning distribution of the Capital One account after Gill's death, by failing to file a final tax return upon termination of the Trust, by having their attorney and agent declare "termination" of the Trust while representing that Viera is not required to provide an accounting, and by failing to comply with two (2) orders from the Surrogate's Court to prepare and file an accounting for the Trust.

38.  Prior to Gill's death, Horan and Joffe had no reasonable basis for questioning the defendants' representations that Financial Accounts were being used on behalf of Gill.  However, after distribution of the Capital One account on February 23, 2017, Horan and Joffe repeatedly asked Vieira for an accounting of money delivered to Gill from the Financial Accounts.  In response, Vieira, through her attorney, repeatedly and falsely represented that "The Trust is closed," and that Vieira "is not required to provide, and will not be providing you with an accounting of the Trust."

39.  As a direct and proximate result of the allegations set forth herein, Horan and Joffe have been damaged in an amount to be determined at trial, but believed to exceed $226,395.30.

9

## SECOND COUNT

(Against Vieira for Breach of Fiduciary Duty)

40.  Plaintiff realleges and incorporate by reference all previous paragraphs as if they were fully set forth against herein.

41.  In accepting the position of trustee, Vieira agreed to act at all times in the best interests of the Gill and the Trust, and had a fiduciary duty to act at all times in the best interests of Horan and Joffe.

42.  As a trustee, Vieira owed the highest obligations and common law fiduciary duties to Gill, Horan, and Joffe, and had a duty to invest and manage the Financial Accounts of the Trust pursuant to the New York Prudent Investor Act, NY EPTL § 11-2.3, et seq. in a responsible and lawful manner, in utmost good faith.

43.  As a trustee, Vieira had a duty to file a final accounting for the Trust pursuant to NY SCPA § 2205, et seq. and pursuant to order by the Hon. Margaret C. Reilly, Surrogate for the County of Nassau, State of New York.

44.  By engaging in the illegal and fraudulent schemes described above, Vieira breached her fiduciary obligations and duties to Horan and Joffe.

45.  As a direct and proximate result of the allegations set forth herein, Horan and Joffe have been damaged in an amount to be determined at trial, but believed

10

to exceed $226,395.30.

## THIRD COUNT

(Against Lehner for Aiding a Breach of Fiduciary Duty)

46.  Plaintiff realleges and incorporate by reference all previous paragraphs as if they were fully set forth against herein.

47.  As alleged above, Vieira as trustee for the Trust, owed a fiduciary duty to Gill, Horan, and Joffe. That duty was breached by Vieira engaging in the illegal and fraudulent schemes described above.

48.  Defendant Lehner knowingly aided, encouraged, cooperated and/or participated in, and substantially assisted Vieira in the breaches of her fiduciary duties.

49.  As a direct and proximate result of the allegations set forth herein, Horan and Joffe have been damaged in an amount to be determined at trial, but believed to exceed $226,395.30.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against Defendants for each Count in an amount to be determined at trial, but believed to exceed $226,395.30, together with interest as permitted under law, the costs of this action, and such other and further relief as this Court deems just and proper.

11

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action.

Dated:      Nassau, NY
            February 28, 2018

Michael A. Markowitz, P.C.

Michael A. Markowitz, Esq.
Attorney for Plaintiff
1553 Broadway
Hewlett, NY  11557
(516) 295-9061
attorney@mampc.net

12

THE ANDREW R. GILL IRREVOCABLE TRUST

REMY D. LEHNER, SETTLOR

LINDA HORAN, TRUSTEE

EXHIBIT 1

THIS TRUST AGREEMENT made this _15_ day of March, 2000, by and between **REMY D. LEHNER** (hereinafter referred to as the "Settlor") and **LINDA HORAN** (hereinafter referred to as the "Trustee" or "Trustees").

## W I T N E S S E T H :

WHEREAS, it is the intention of the Settlor hereby to create a trust primarily for the benefit of her son, ANDREW R. GILL, which trust shall be known as "The Andrew R. Gill Irrevocable Trust"; and

WHEREAS, the Settlor intends to transfer to the Trustees the property as described and listed in Schedule A, attached hereto and incorporated herein by this reference;

NOW, THEREFORE, in consideration of the premises, it is hereby agreed that the trust estate shall be held by the Trustees, IN TRUST, for the uses and purposes and on the terms and conditions herein set forth:

## ARTICLE I

### Nature of Agreement

The Settlor hereby acknowledges that she has been fully advised as to the legal effect of the execution of this Agreement and hereby declares that this Agreement shall be irrevocable and that the Settlor shall not have any power at any time to alter,

amend, revise, modify, revoke or terminate any of the provisions of this Agreement.

## ARTICLE II

### Trust Additions

(A)  At any time during the existence of this Agreement, the Settlor and others may transfer to the Trustees by Will or inter vivos any property or assets in addition to those theretofore held by the Trustees hereunder.

(B)  In the event that additional property or assets shall be transferred to, or received by, the Trustees such additions shall become a part of the principal of this trust and shall be held, administered and distributed by the Trustees in accordance with the provisions hereof.

(C)  If the Trustees, in their sole and absolute discretion, deem it necessary or advisable, then, immediately prior to each such transfer, the trust fund shall be valued by the Trustees at market value so that at all times the Trustees may determine the percentage of the trust fund that was derived from each source.

## ARTICLE III

### Merger

If, at any time, the Trustees are holding any trust fund for the primary benefit of any person for whose primary benefit the

2

Trustees are holding any other trust fund created by the Settlor or others, the Trustees may, in their sole and absolute discretion, consolidate and commingle such trust funds and hold and dispose of them as one consolidated trust fund.

## ARTICLE IV

### Disclaimers

(A)  A person having a beneficial interest under any trust created under this Agreement is authorized to disclaim all or any part of that interest at any time before accepting it or its benefits. A beneficial interest may be disclaimed with respect to amounts, fractions or percentages of that interest, or with respect to particular assets, as the person having that interest determines.

(B)  In addition to any other method of disclaimer recognized by law, a beneficial interest may be disclaimed by an acknowledged instrument to that effect, executed by the person having that interest and delivered to any Trustee. The legal representatives of a deceased person are authorized, similarly, to disclaim that deceased person's beneficial interest, without authorization or approval by any court.

(C)  Unless the person making the disclaimer specifically provides to the contrary in the instrument making the disclaimer, it shall not constitute a disclaimer of that person's right to receive any other interest under any other trust created under this Agreement upon a later disclaimer by another person, upon the death

3

of another person or pursuant to the exercise of a power of appointment granted to another person in a nonfiduciary capacity. A disclaimed interest shall be administered and distributed as if the person who had that interest died immediately before it was created.

## ARTICLE V

### Spendthrift Provision

No beneficial interest under any trust created under this Agreement may be voluntarily or involuntarily anticipated, assigned, encumbered, pledged, sold or otherwise transferred, except pursuant to the valid exercise of a power of appointment granted under any trust created under this Agreement or the exercise of the powers granted in this Agreement to disclaim. No beneficial interest under any trust created hereunder shall be capable of being taken or reached by any attachment, levy, writ or other legal or equitable process to satisfy any claim against, or obligation of, the person having that interest. No such interest shall be subject to control or interference by any other person. Any attempt to dispose of, or to take or reach, any interest in violation of this spendthrift provision shall be invalid and given no effect by any Trustee.

4

## ARTICLE VI

## Distribution Provisions

(A) The principal shall be held, IN TRUST, for the benefit of the Settlor's son, ANDREW R. GILL, and the Trustees shall pay to him or apply for his benefit, so much or all of the net income of this trust, at such time or times and in such amounts, as the Trustees in their sole and absolute discretion, may deem advisable. The net income which is not paid to or applied for the benefit of the Settlor's son in any year shall be added to the principal of this trust at the end of such year and shall be held, administered and disposed of as a part thereof.

(B) The Trustees shall pay to or apply for the benefit of the Settlor's son so much or all of the principal of this trust, at such time or times and in such amounts, as the Trustees, in their sole and absolute discretion, may deem advisable.

(C) In addition to such payments of principal as may be made under the preceding provision, the Trustees shall distribute to the Settlor's son one-quarter (1/4) of the then remaining principal of this trust when he shall have attained the age of thirty (30) years, one-third (1/3) of the balance thereof when he shall have attained the age of thirty-four (34) years, one-half of the balance thereof when he shall have attained the age of thirty-eight (38) years and the then remaining principal thereof when he shall have attained the age of forty-two (42) years.

5

(D)  Upon the death of the Settlor's son prior to attaining the age of forty-two (42) years, the Trustees shall distribute the then remaining principal and any undistributed income of this trust to his then living issue, in equal shares, per stirpes, and, in default of such issue, as follows:

(1)  One-third (1/3) to the Settlor's friend, JOSHUA JOFFE, or, if he shall not then be living, to his then living issue, in equal shares, per stirpes.

(2)  One-third (1/3) to the Settlor's cousin, DAMARIS RODRIGUEZ-VIERA, or, if she shall not then be living, to the Settlor's cousin, DANIEL RODRIGUEZ, or if he shall not then be living, to his then living issue, in equal shares, per stirpes.

(3)  One-third (1/3) to the Settlor's friend, LINDA HORAN, or, if she shall not then be living, to her then living issue, in equal shares, per stirpes.

## ARTICLE VII

### Trust Administration

(A)  In exercising their discretion, to pay or apply income and\or principal with respect to the trust created under this Agreement, the Settlor directs that:

(1)  The Trustees be extremely liberal in the exercise of such discretion, and preference be given to the health, education, maintenance and support of the Settlor's son, and all doubts be resolved in his favor.

6

(2)   Any decision of the Trustees with respect to the exercise of such discretion, made in good faith, shall fully protect the Trustees and shall be binding and conclusive upon all persons interested in any trust created hereunder.

(B)   Any provision of this Agreement to the contrary notwithstanding, the Trustees may at any time, in their sole and absolute discretion, terminate the trust created under this Agreement and distribute all of the then principal and income of such trust to the Settlor's son, free of trust, if in their judgment the principal of such trust is so small that it would be inadvisable to continue to hold it in trust.


## ARTICLE VIII

## Power in Trust for Minors

(A)   If pursuant to this Agreement any property shall vest in absolute ownership in a minor, the Settlor authorizes and empowers the Trustees, in their sole and absolute discretion, to hold such property, or any part thereof, in a separate fund for the benefit of such minor during his minority, and to invest and reinvest such property, collect the income therefrom and to pay or apply so much or all of the income and principal to or for the benefit of such minor as the Trustees, in their sole and absolute discretion, may deem advisable, and to accumulate, invest and reinvest the balance of said income until such minor shall attain his majority, and thereupon to pay the then principal, together

7

with any accumulated income, to such minor or, if such minor shall die before attaining his majority, to the estate of such minor. The authority conferred upon the Trustees by this provision shall be construed as a power only and shall not operate to suspend the absolute ownership of such property to such minor or to prevent the absolute vesting thereof in such minor.

(B)   With respect to any property held hereunder, the Trustees shall have all the powers, privileges, discretion and immunities conferred upon them elsewhere in this Agreement; and they shall not be required to give any bond or other security for the faithful performance of their duties hereunder in any jurisdiction whatsoever or, if any bond is required, they shall not be required to give any surety thereon.

(C)   Payment of income or principal to or for the benefit of a minor under any of the provisions of this Agreement may be made by the Trustees directly to such minor, to a parent, a guardian or any other person having the care and control of such minor, to a custodian for such minor under the applicable Uniform Transfers to Minors Act or any comparable act, or anyone otherwise applying such income or principal for the benefit of such minor. Any payment hereinabove authorized shall be a full discharge to the Trustees with respect thereto.

(D)   For the purposes of this trust Agreement, a minor shall be deemed to be a person who has not yet attained the age of twenty-one (21) years.

8

## ARTICLE IX

### Trustees' Powers

(A)   In the investment, administration and distribution of any trust created under this Agreement, the Settlor grants to the Trustees with respect to any and all property, whether real or personal, which shall at any time constitute part of any trust created hereunder, the following powers, in addition to those conferred by law:

(1)   To retain any such property as to investment without regard to the proportion which such property or property of a similar character, so held, may bear to the entire amount of the trust in which such property is held, whether or not such property is of the class in which fiduciaries are authorized by law or any rule of court to invest trust funds.

(2)   To sell such property at either public or private sale for cash or on credit, to exchange any such property and to grant options for the purchase thereof.

(3)   To invest and reinvest in property of any character, real or personal, including, without limitation, partnerships, bonds, notes, debentures, mortgages, certificates of deposit, common and preferred stocks, shares or interests in investment trusts including any common trust fund maintained by a corporate Trustee, whether or not such property is of the class in which fiduciaries are authorized by law or any rule of court to invest trust funds and without regard to the proportion which such property or property of a similar character, so held, may bear to the entire amount of the trust in which such property is held.

(4)   To consent to and participate in, or to oppose, any foreclosure, liquidation or plan of reorganization, consolidation, merger, combination or other similar plan, and to

9

consent to any contract, lease, mortgage, purchase, sale or other action by any corporation pursuant to such plan.

(5)   To deposit any such property with any protective reorganization or similar committee, to delegate discretionary power thereto, and to pay part of the expenses and compensation and any assessments levied with respect to such property.

(6)   To exercise all conversion, subscription, voting and other rights of whatever nature pertaining to any such property and to grant proxies, discretionary or otherwise, in respect thereto.

(7)   To manage any real property in the same manner as if the absolute owners thereof, including, without limitation, the power from time to time to lease, or grant options to lease, any such real property for any period of time and although any such period may extend beyond the duration of the trust in which property is held, with any provisions for renewals thereof, without application to any court; to enter into any covenants or agreements relating to the property so leased or to any improvements then or thereafter erected thereon; to insure against loss by fire or other casualty; and to make partition or enter into any agreements of partition of any real property which, or an interest in which, shall at any time constitute part of any trust hereunder, and to give or receive money or other property for equality of partition.

(8)   To allocate, in the sole and absolute discretion of the Trustees, in whole or in part, to principal and income, all receipts and disbursements for which no express provision is made under the law of the State governing this Agreement.

(9)   To make loans and borrow money in amounts and upon such terms for the purposes and benefit of any trust created hereunder as they, in their sole and absolute discretion, may determine.

10

(10)   To extend the time of payment of any obligation held by them and to compromise, settle or submit to arbitration upon such terms as they may deem advisable, or to release any claim in favor of or against any trust created hereunder.

(11)   To allocate to two or more shares or trusts an undivided interest in one or more properties or blocks of securities, including stocks.

(12)   To cause any securities or other property held by them to be registered and held in the name of a nominee, and the liability of the Trustees shall be neither increased nor decreased thereby.

(13)   In the division or distribution of any trust created hereunder, or any part thereof, to make partition, division or distribution of property in kind; and, for any such purpose, to determine to the extent permissible by law the value of any such property.

(14)   To exercise any stock options which may become a part of any trust created hereunder.

(15)   To receive, retain or acquire a policy or policies of life insurance on the life of any beneficiary hereunder or on the life of any person in whom any such beneficiary has an insurable interest, naming the Trustees as sole beneficiaries, and to pay any premium thereon from the principal or income of the trust. The Trustees shall have full power and authority to hold and deal with any such policy of life insurance as owners thereof, including, without limitation, the power: to execute an automatic premium loan agreement with respect to any such policy; to borrow money for the purpose of paying any premium thereon, either from the company issuing such or from any other source, and to assign such policy as security for such loan; to exercise any option contained in such policy with respect to any dividend or share of surplus apportioned thereto; to elect any extended term insurance nonforfeiture option contained in such policy; to surrender such

11

policy for its cash value; to sell such policy to the insured or to any person having an insurable interest on the life of the insured; and to exercise any other right, option or benefit contained in the policy or permitted by the insurance company issuing such policy. If upon the termination of any trust created hereunder, the Trustees hold any such policy as a part thereof, they may transfer and assign such policy in distribution of such trust allotting the policy in payment of any share thereof, provided that, insofar as it is practicable to do so, any such policy shall be distributed as part of the share in the trust of the person insured thereunder and the Trustees may determine the value of such policy. If a Trustee is insured under any policy retained or acquired hereunder, then such Trustee shall not be permitted to exercise any rights or powers with respect to such policy granted to the Trustees and such rights and powers shall be vested exclusively in the remaining Trustees.

(16) To employ and compensate agents, attorneys, accountants, investment counsel or custodians, and to delegate to them discretionary power.

(17) To do all such acts, take all such proceedings and exercise all such rights and privileges, although not hereinbefore specifically mentioned, with respect to any such property as if the absolute owners thereof and, in connection therewith, to make, execute and deliver any instruments and to enter into any covenants or agreements binding any trust created hereunder.

(B) No persons dealing with the Trustees shall be required to inquire into the application or disposition of any money or other property paid or delivered, or into the authority for or propriety of any transaction. All powers granted to the Trustees shall continue until actual distribution of the property.

12

(C)   No Trustee shall be responsible for the acts or omissions of any other Trustee or for allowing any other Trustee to have custody or control of trust assets.

(D)   Any decision of the Trustees with respect to the exercise or nonexercise by them of any discretionary power under this Agreement, or the time or manner of the exercise thereof, made in good faith, shall fully protect them and shall be binding and conclusive upon all persons interested in the trust estate.

## ARTICLE X

### Accountings

(A)   Any Trustee acting under this Agreement (or the legal representatives of her estate) may, at any time and from time to time, render to such person or persons eligible to receive income from the trust or trusts created hereunder, as shall be of full age and competent at the time when such account is rendered, an account of the acts and transactions of such Trustee with respect to the income and principal of the trust from the date of the creation of the trust or from the date of the last previous account of such Trustee, as the case may be.

## ARTICLE XI

### Appointment of Trustees

(A)   In the event that a Trustee shall cease to act for any reason during the lifetime of the Settlor, the Settlor shall

appoint, by an instrument in writing, a successor Trustee, other than herself, to fill such vacancy.

(B) If LINDA HORAN shall cease to act as Trustee at any time for any reason, then the Settlor's friend, JOSHUA JOFFE, shall be appointed to act as successor Trustee.

(C) Whenever the term "Trustees" is used in this Agreement, it shall be deemed to refer to the Trustees acting under a trust from time to time, unless the context expressly or impliedly refers to less than all of the Trustees; and all powers and discretion vested in the Trustees shall be vested in, and exercisable by, any successor Trustee.

(D) No Trustee herein designated shall be required to give any bond or other security for the faithful performance of his duties in any jurisdiction whatsoever; or, if any bond is required, no sureties shall be required thereon.

(E) Any Trustee of the trust created under this Agreement may resign from office without leave of court at any time and for any reason by delivering a written instrument of resignation to the next succeeding Trustee, if any.

## ARTICLE XII

### Miscellaneous

(A) Wherever necessary or appropriate, the use herein of any gender shall be deemed to include the other gender; and the use

14

herein of either the singular or the plural shall be deemed to include the other.

  (B) This Agreement shall become effective, as of the day and year first above written, upon the execution thereof by both the Settlor and the Trustee. It shall be governed and construed in all respects according to the laws of the State of New York.


  IN WITNESS WHEREOF, the Settlor has hereunto set her hand and affixed her seal, and the Trustee, to evidence her acceptance of this Agreement, has hereunto set her hand and affixed her seal, all on the day and year first above written.

_____
REMY D. LEHNER, Settlor

_____
LINDA HORAN, Trustee


STATE OF NEW YORK )
       : ss.:
COUNTY OF NASSAU  )


On the ___ day of March, in the year 2000, before me, the undersigned, personally appeared **REMY D. LEHNER**, personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ROSE ROSSETTI
Notary Public, State of New York
No. 30-4731004
Certified in Nassau County
Term Expires March 30, 200_

15

STATE OF NEW YORK )
                  : ss.:
COUNTY OF NASSAU  )

On the 15 day of March, in the year 2000, before me, the undersigned, personally appeared **LINDA HORAN**, personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

2001

16

## SCHEDULE  A

The Settlor hereby transfers to the Trustee the sum of One Hundred Dollars ($100).

At the Surrogate's Court of the State
of New York, County of Nassau, at
the Courthouse located at 262 Old
Country Road, Mineola, New York,
on the _6_ day of _Sept_ , 2017.

PRESENT:   HON. MARGARET C. REILLY
                    Surrogate

------------------------------------------------------------------x

Petition for a Compulsory Accounting and Related
Relief in the Estate of ~~Joshua Joffe~~ +
~~Linda Horan~~ +
The Andrew R. Gill Irrevocable Trust
                                                    Deceased.

File No. _2017-2766_

ORDER TO ACCOUNT

------------------------------------------------------------------x

A verified petition having been filed in this proceeding for an order seeking a compulsory

accounting and related relief pursuant to SCPA §2205 and a citation having been issued and

proof of service of the citation upon the respondent(s) having been filed, directing the

respondent(s) to show cause why an order should not issue requiring the filing of such

accounting, and no opposition to the petition having been interposed,

NOW, _on motion of_ , petitioner/attorney for petitioner, it is

ORDERED that  respondent(s) _Damaris Rodriquez Viera_ file an account as

~~executor/administrator~~/trustee/~~attorney-in-fact~~ and petition for the judicial settlement of the

account and the issuance of citation on the account within _60_ days of personal

service  upon respondent(s)  of a copy of this order.

Hon. Margaret C. Reilly
Judge of the
Surrogate's Court

Enforcement of this order by contempt requires that respondent be personally served with an attorney-certified or
court-certified copy of this order (SCPA §607).

# EXHIBIT 2

**SURROGATE'S COURT OF THE STATE OF NEW YORK**
**COUNTY OF NASSAU**

In the Matter of ~~the Estate of~~

PETITION FOR A COMPULSORY
ACCOUNTING AND RELATED
RELIEF IN THE ESTATE OF
THE ANDREW R. GILL
IRREVOCABLE TRUST

                                    Deceased.

File No.: 2017 - 2766

**STIPULATION**

**PRESENT:  HON. MARGARET C. REILLY, SURROGATE**

IT IS STIPULATED AND AGREED BETWEEN
THE ATTORNEY FOR PETITIONER AND ATTORNEY
FOR RESPONDENT THAT RESPONDENT'S TIME
TO PREPARE AND FILE AN ACCOUNTING
PURSUANT TO THE ORDER DATED 9-6-17
IS EXTENDED TO ~~tbbbbbbbbbb~~ 1-4-2018.
NO ADJOURNMENTS WITHOUT COURT APPROVAL.

Dated:   11/6/17
            Mineola, New York

Attorney for   PETITIONER                     Attorney for   Respondent

Attorney for _____              Attorney for _____

**SO ORDERED:**

**HON. MARGARET C. REILLY, SURROGATE**

**EXHIBIT 3**