**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

LINDA HORAN and JOSHUA JOFFE,

                        Plaintiffs,        **REPORT AND RECOMMENDATION**

      v.                                    18-cv-01286 (JMA) (ST)

DAMARIS VIEIRA a/k/a DAMARIS
RODRIGUEZ VIEIRA and REMY D.
LEHNER,

                        Defendants.
-------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

       Linda Horan ("Horan") and Joshua Joffe ("Joffe") (together, "Plaintiffs") commenced this action against Damaris Vieira ("Vieira") and *pro se* Remy D. Lehner ("Lehner") (together, "Defendants") on February 28, 2018, alleging counts for fraud and aiding and abetting fraud, breach of fiduciary duty, and aiding a breach of fiduciary duty. Plaintiffs moved for summary judgment on their claims for breach of fiduciary duty and aiding a breach of fiduciary duty. Vieira filed a Cross-Motion for Summary Judgment as to Plaintiffs' claims of aiding and abetting fraud and breach of fiduciary duty. The Honorable Joan M. Azrack referred the Motions to the undersigned to issue a Report and Recommendation.

       For the below reasons, I respectfully recommend that Plaintiffs' Motion for Summary Judgment be DENIED and Vieira's Cross-Motion for Summary Judgment be GRANTED.

   **I.   BACKGROUND**

       **a.  Factual Background**

           **i.  The Parties and the Trust**

1

The facts, as described in Plaintiffs' and Vieira's Rule 56.1 statements and a letter submitted by Lehner, are as follows.[1] Plaintiffs are individuals who are domiciled and reside in the State of New York. Pls.' 56.1 Statement of Material Facts ("Pls.' 56.1") ¶ 1, Dkt. No. 55-1. Vieira is an individual who is domiciled and resides in the State of Florida. *Id.* ¶ 2. Lehner is an individual who is domiciled and resides in the State of Pennsylvania. *Id.* ¶ 3. Andrew Gill ("Gill") was Lehner's son. *Id.* ¶ 6. On May 12, 2010, when Gill was 24 years old, he died in Florida without any living issue. *Id.* ¶ 43. Daniel Lehner was 100% owner of Inflight Newspapers, Inc. ("Inflight"), before his death on June 3, 1997. *Id.* ¶ 4. Daniel Lehner's will instructed that his estate be divided into thirds, with one third to go to each of Lehner, Gill, and Lois Lehner ("Lois"). *Id.* ¶ 5. On March 9, 2000, Inflight and Lehner, on Gill's behalf, signed an agreement by which Gill sold his shares of Inflight in consideration of payment pursuant to a promissory note (the "Promissory Note"), paid to either Gill or a trustee of a trust created for his benefit. *Id.* ¶ 7.

On March 15, 2000, Lehner created The Andrew R. Gill Irrevocable Trust ("the Trust"), an irrevocable trust created for Gill's benefit. *Id.* ¶ 8; Vieira's 56.1 ¶ 8. It is disputed whether Inflight's payments pursuant to the Promissory Note were paid to the Trust. *Id.* ¶ 9; Vieira's 56.1 ¶ 9. Pursuant to the Trust, the trustees agreed to pay income or principal of the Trust directly to Gill or to a third party for Gill's benefit. Pls.' 56.1 ¶ 10. Payments were to be made at such times and in such amounts as trustees, in their sole and absolute discretion, deemed advisable. *Id.* The Trust provides the following distribution provision:

> Upon the death of [Gill] prior to attaining the age of forty-two (42) years, the Trustees shall distribute the then remaining principal and any undistributed income of this trust to his then living issue, in equal shares, per stirpes, and, in default of such issue, as follows: (1) One-third (1/3) to [Lehner's] friend, [Joffe], or, if he

---

[1] Statements attributed only to Plaintiffs' Rule 56.1 statement are not in dispute unless otherwise noted. Facts disputed by Vieira or Lehner are identified throughout.

2

> shall not then be living, to his then living issue, in equal shares, per stirpes. (2) One-third (1/3) to [Lehner's] cousin, [Vieira], or, if she shall not then be living, to [Lehner's] cousin, Daniel Rodriguez, or if he shall not then be living, to his then living issue, in equal shares, per stirpes. (3) One-third (1/3) to [Lehner's] friend, [Horan], or, if she shall not then be living, to her then living issue, in equal shares, per stirpes.

*Id.* ¶ 11.  Though it is disputed whether she assumed the role by request or designation, Horan served as trustee from the creation of the trust through April 11, 2004. *Id.* ¶ 12; Vieira's Resp. Pls.' 56.1 ("Vieira's 56.1") ¶ 12, Dkt. No. 55-31. Joffe succeeded Horan and served as trustee until November or December of 2004, with the exact date of Joffe's resignation being in dispute. Pls.' 56.1 ¶ 13; Vieira's 56.1 ¶ 13. Vieira became trustee after Joffe. Pls.' 56.1 ¶ 14; Vieira's 56.1 ¶ 14.

Upon Vieira's becoming trustee, Lehner told Vieira that Vieira had a fiduciary responsibility to the Trust. Pls.' 56.1 ¶ 15; Vieira's 56.1 ¶ 15. Though the parties agree upon this, Vieira notes she testified that she did not then understand what this meant. Vieira's 56.1 ¶ 15. Lehner wrote Inflight's address on Vieira's trustee acceptance document and Vieira understood Trust statements would be sent to Inflight. Pls.' 56.1 ¶¶ 16-17. Lehner told Vieira that Lehner would be responsible for Trust deposits and take care of bank statements concerning the Trust. *Id.* ¶¶ 18-19. The Trust had accounts at Astoria Federal Savings Bank ("Astoria"), Bank of New York, Fidelity Investments, and Capital One. Pls.' 56.1 ¶ 21, 28, 40, 53; Vieira's 56.1 ¶ 53. The Bank of New York Account became a Chase Bank ("Chase") account. Pls.' 56.1 ¶ 30. While there is dispute over how exactly the banks came to have these addresses, Astoria was directed to send statements to Inflight's address and the address associated with the Bank of New York was Lehner's home address. *Id.* ¶¶ 22, 29; Vieira's 56.1 ¶¶ 22, 29. Lehner's PO box was associated with the Fidelity Investments and Chase accounts. Pls.' 56.1 ¶¶ 31, 40. Vieira

did not have access to the PO box.  *Id.* ¶ 32.  Vieira did not receive a Trust bank statement until 2015.  *Id.* ¶ 20.

### ii. Facts Related to Inflight's Bankruptcy

A bankruptcy proceeding concerning Inflight was filed in the United States Bankruptcy Court in the Eastern District of New York.  *Id.* ¶ 33.  R. Kenneth Barnard, Esq. ("Barnard") was a Chapter 7 trustee in the proceeding.  *Id.*  The Trust was not a party to Inflight's bankruptcy proceeding.  *Id.*  While Lehner does not dispute that the Trust was not a party to the bankruptcy proceeding, she asserts that Lois and Barnard contacted her counsel and "insist[ed] on money from [the Trust] to be sent back to Inflight in addition to what [Lehner] had to pay."  Lehner Resp. Mot. ("Lehner Letter") at 5, Dkt. No. 55-32.

On August 24, 2008, Barnard or Barnard's counsel executed a stipulation of settlement agreeing to discontinue the bankruptcy proceeding in consideration of Lehner paying $1,000,000.00.  Pls.' 56.3 ¶ 34; Vieira's 56.1 ¶ 34.  As further consideration for the stipulation of settlement, Gill, as a creditor, released the bankruptcy trustee and Inflight from all claims including the Promissory Note.  Pls.' 56.1 ¶ 35.  The Bankruptcy Court issued an order approving the stipulation of settlement on October 24, 2008.  *Id.* ¶ 36.  It did not order the Trust to pay money to any individual or entity.  *Id.*

### iii. Payments from the Trust

On December 31, 2004, the Astoria account had a balance of $52,279.39.  *Id.* ¶ 23.  On July 16, 2008, Vieira sent a letter to Astoria for two checks, totaling $31,577.40, for a car and insurance for Gill.  *Id.* ¶ 24.  On December 17, 2009, a letter was issued to Astoria.  *Id.* ¶ 26; Vieira 56.1 ¶ 26.  It is disputed whether Vieira issued the letter.  *Id.*  The letter directed Astoria to

4

terminate the Trust's account and pay the money in the account to Lehner.  *Id.*  Lehner testified that she received no money from Astoria.  Pls.' 56.1 ¶ 27.

On February 13, 2009, Chase issued a bank check from the Trust's account for $75,000.00, paid to the order of Barnard.  *Id.* ¶¶ 33, 37.  On April 6, 2009, Chase issued a bank check for $48,000 from the Trust's account, paid to the order of Lehner.  *Id.* ¶ 38.  Lehner does not recall how she used the $48,000.  *Id.* ¶ 39.

In 2009, $154,260.18 was withdrawn from the Trust's Fidelity Investments account.  *Id.* ¶ 41.  According to Plaintiffs, neither Vieira nor Lehner know who withdrew the money, how the money was withdrawn, or where the money went after being withdrawn.  *Id.* ¶¶ 41-42.  Lehner disputes this, stating the money went to either Gill or the bankruptcy trustee.  Lehner Letter at 5.

On May 12, 2010, the day Gill died, Chase issued a bank check from the Trust's account for $18,816.81, paid to the order of Lehner.  *Id.* ¶¶ 43-44.  It is disputed whether the check was remitted before or after Gill's death.  *Id.* ¶ 45; Vieira's 56.1 ¶ 45.  According to Plaintiffs, Lehner does not recall how she used the money from the trust.  Pls.' 56.1 ¶ 46.  Lehner disputes this, suggesting she used the money to pay a halfway house where Gill had been staying before going to the hospital and to pay for Gill's funeral.  Lehner Letter at 5.

In 2015, Horan came across the Trust's Capital One account.  Pls.' 56.1 ¶ 53; Vieira's 56.1 ¶ 53.[2]  Vieira retained the law firm of Hines Norman Hines, P.L. ("HNH").  Pls.' 56.1 ¶ 54.  The account had a balance of $25,129,92, from which money was paid to HNH and the remainder was paid in equal amounts to Horan, Joffe, and Vieira.  *Id.* ¶ 55.

### iv. The Trust's Tax Returns

---

[2] Plaintiffs characterize this as Horan's having "discover[ed]" the Capital One account.  Pls.' 56.1 ¶ 53.  Vieira disputes this, noting that the Complaint claims the Capital One account was reported in an accounting Horan prepared in 2004.  Vieira's 56.1 ¶ 53.  Horan's affidavit suggests that the Capital One account had been in her name since at least 2004.  Horan Aff. ¶ 15, Dkt. No. 55-3.

Vieira never spoke to an accountant about the Trust's tax returns for 2004 through 2008 tax returns, nor did she sign any of those tax returns. Pls.' 56.1 ¶¶ 47-51. Vieira does not know if the Trust's tax returns for 2004 through 2008 were ever filed, if the Trust filed tax returns after 2008, or if the Trust filed a final tax return. *Id.* ¶ 47-52.

### v. Accounting, the Surrogate's Court, and the Instant Action

After Horan came across the Capital One account, she demanded an accounting from Vieira. *See Id.* ¶ 56; Horan Aff. ¶ 19. In June 2017, HNH responded with a letter declining to provide the accounting. Pls.' 56.1 ¶ 56; Vieira's 56.1 ¶ 56. Plaintiffs filed a petition with the Nassau County Surrogate's Court, requesting an order directing Vieira to file an accounting for the Trust. Pls.' 56.1 ¶ 57. On September 6, 2017, the Surrogate's Court issued an order directing Vieira to account as trustee and petition for the judicial settlement of the account for the Trust. *Id.* ¶ 58. Though the specific facts surrounding the Surrogate's Court proceeding are disputed, Plaintiffs and Vieira agreed that the matter would be removed from the Surrogate's Court's calendar before its resolution. *Id.* ¶ 59; Vieira's 56.1 ¶ 59. It was understood that Plaintiffs would bring the instant action in federal court. *Id.*

### b. Procedural History

Plaintiffs commenced this action against Defendants on February 28, 2018. *See generally* Compl., Dkt. No. 1. In the Complaint, Plaintiffs allege three counts: Count One is against Lehner for fraud and against Vieira for aiding and abetting fraud; Count Two is against Vieira for breach of fiduciary duty; and Count Three is against Lehner for aiding a breach of fiduciary duty. *Id.* On June 22, 2020, Plaintiffs filed their Motion for Summary Judgment, seeking summary judgment on Counts Two and Three of the Complaint. *See generally* Pls.' Mem. Supp. Mot. Summ. J. ("Mot"), Dkt. No. 55-2. In connection with her Opposition, Vieira

filed a Cross-Motion for Summary Judgment on Count One, as alleged against Vieira, and Count Two. *See* Mem. Supp. Vieira's Cross-Mot. Summ. J. & Opp. Mot. ("Vieira Opp.") at 1-22, Dkt. No. 55-31. Lehner has submitted a letter in response to Plaintiffs' Motion. *See generally* Lehner Letter. Plaintiffs' Motion and Vieira's Cross-Motion have been fully briefed. *See generally*, Pls.' Reply Defs.' Opps. Mot. ("Pls.' Reply"), Dkt. No. 55-33; Vieira's Reply Pls.' Reply ("Vieira's Reply"), Dkt. No. 57.

## II. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996). Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial burden of establishing that there are no genuine issues of material fact[;] once such a showing is

7

made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

At the summary judgment stage, the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *See Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and internal quotation marks omitted). Nonetheless, even a *pro se* plaintiff is required to demonstrate the absence of a genuine issue of material fact. *See McDonald v. Doe*, 650 F. Supp. 858, 861 (S.D.N.Y. 1986) ("pro se litigants enjoy special latitude on summary judgment motions"); *see also Estes-El v. Dumoulin*, 2011 U.S. Dist. LEXIS 154788, *7 (E.D.N.Y. Feb. 9, 2011) (internal citations omitted) ("proceeding *pro se* does not relieve a litigant from the usual requirements of summary judgment"). Moreover, a *pro se* litigant cannot rely upon "conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion. *Feuer v. Cornerstone Hotels Corp.*, 2017 U.S. Dist. LEXIS 124433, *23 (E.D.N.Y. Aug. 4, 2017) (*quoting Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

## III. DISCUSSION

### a. Count One

Count One of Plaintiffs' Complaint alleges fraud against Lehner and aiding and abetting fraud against Vieira. Compl. ¶¶ 32-39. The alleged fraud involved a plan for Trust funds to be "paid to Lehner, or to a third-party creditor on behalf of Lehner," instead of being used for the Trust's intended beneficiaries. *Id.* ¶¶ 33-34. Plaintiffs do not seek summary judgment on Count One. Vieira's Opposition and Cross-Motion seeks summary judgment on Plaintiffs' claim against her for aiding and abetting fraud. Vieira Opp. at 21-22.[3] Vieira argues that "Plaintiffs

---

[3] Page numbers cited in connection with filings refer to page numbers assigned by electronic case file.

are unable to prove . . . that [Vieira] had any actual knowledge of a fraudulent scheme by [Lehner]." *Id.* at 21. Plaintiffs do not dispute this in their Reply.

To prevail on a claim for aiding and abetting fraud, a plaintiff must demonstrate: "(1) the existence of an underlying fraud; (2) that the defendant had knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the commission of the fraud." *Filler v. Hanvit Bank*, 339 F. Supp. 2d 553, 557 (S.D.N.Y. 2004) (citing *Wright v. Bankamerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000)). As to the second element, New York law requires that a plaintiff establish the defendant's actual knowledge of the fraud to impose liability for aiding and abetting fraud. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006).

In the affidavit Vieira submitted with her Opposition and Cross-Motion, she states: "[t]o my knowledge, all Trust funds prior to [Gill's] death were used and applied for [Gill's] benefit." Vieira Aff. ¶ 19, Dkt. No. 55-31. Plaintiffs offer no evidence to suggest Vieira actually knew of a fraudulent scheme by which Trust funds were used for purposes other than the benefit of the beneficiaries. Further, Plaintiffs' Reply does not address Vieira's arguments as to why she should be granted summary judgment on Count One. In sum, there is no dispute of material fact as to whether Vieira lacked actual knowledge of the alleged fraud. The Court thus respectfully recommends that Vieira's Cross-Motion for Summary Judgment be granted as to Plaintiffs' claim against her for aiding and abetting fraud. *See Lerner*, 459 F.3d at 293 (affirming summary judgment where plaintiffs failed to adequately allege actual knowledge of fraud).

### b. Count Two

Plaintiffs seek summary judgment on Count Two of the Complaint, which alleges breach of fiduciary duty against Vieira. Compl. ¶¶ 40-45; Mot. at 18-24. In addition to putting forth a substantive argument on the merits, Vieira contends Plaintiffs' claims against her are barred by

the statute of limitations, that neither the doctrine of open repudiation nor the doctrine of equitable tolling applies, and that she is therefore entitled to summary judgment in her favor. Vieira Opp. at 15-19. In the alternative, Vieira argues that the doctrine of laches bars Plaintiffs' claims. *Id.* at 20-21. Plaintiffs' response asserts, among other arguments, that their breach of fiduciary duty claim against Vieira is timely pursuant to the doctrine of open repudiation. Pls.' Reply at 5-6. Vieira rebuts, reiterating that the open repudiation doctrine is here inapplicable. Vieira Reply at 4-5.

As a preliminary matter, the Court will consider whether Plaintiffs' claims were timely brought. According to the New York Court of Appeals, "New York law does not provide a single statute of limitations for breach of fiduciary duty claims. Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009) (citing *Loengard v. Sante Fe Indus.*, 70 N.Y.2d 262, 266 (1987)). The *IDT Corp.* Court proceeded to identify three possible limitations periods:

> Where the remedy sought is purely monetary in nature, courts construe the suit as alleging "injury to property" within the meaning of CPLR 214 (4), which has a three-year limitations period. Where, however, the relief sought is equitable in nature, the six-year limitations period of CPLR 213 (1) applies. Moreover, where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations under CPLR 213 (8).

*Id.* (internal citations omitted). If there is a fraud claim that is not "essential," but rather "incidental," the three-year limitations period applies. *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 396 (E.D.N.Y. 2018) (citing *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 545 (2d Cir. 1999)). "A fraud action is not incidental only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the

10

injuries caused by the fraud are distinct from the injuries caused by the alternate claim." *Id.* at 397 (quoting *Corcoran* 202 F.3d at 545).

A tort claim like breach of fiduciary duty accrues when the claim becomes enforceable. *IDT Corp.*, 12 N.Y.3d at 140 (citing *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993)); *see also Malmsteen v. Berdon, LLP, FSB*, 369 F. App'x 248, 249 (2d Cir. 2010) (stating that a claim for breach of fiduciary duty generally "accrues at the time of the breach"). An exception to this standard can be found in the open repudiation doctrine, under which "the limitations period for claims arising out of a fiduciary relationship does not commence until the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." *Spinnato*, 322 F. Supp. 3d at 397 (quoting *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001)) (internal quotation marks omitted). However, the "open repudiation doctrine only applies to a plaintiff seeking equitable relief, not one seeking monetary damages." *Id.* at 398 (citing *Access Point Med., LLC v. Mandell*, 963 N.Y.S.2d 44 (App. Div. 2013)).

Another exception is the doctrine of equitable estoppel, which precludes a party from raising a statute of limitations defense where the opposing party's wrongdoing "produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006) (quoting *Gen. Stencils v. Chiappa*, 18 N.Y.2d 125, 128 (1966)). For equitable estoppel to apply, a "plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations." *Id.* at 674; *see also Spinnato*, 322 F. Supp. 3d at 395 (party seeking estoppel must show "lack of knowledge of the true facts; reliance upon the conduct of the party estopped; and a prejudicial change in position") (quoting *River Seafoods v. JPMorgan Chase Bank*, 796 N.Y.S.2d 71, 74 (App. Div. 2005)). Courts have suggested that a "failure to disclose facts underlying a claim, even without any affirmative acts of concealment,

11

nevertheless may equitably estop a statute of limitations defense if the defendant stood in a fiduciary relationship which obligated the defendant to inform the plaintiff of such facts." *Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 746 (S.D.N.Y. 1997). Even so, a party that seeks to invoke equitable estoppel "must demonstrate due diligence in bringing the cause of action and reasonable care in ascertaining facts which might have led to discovery of defendant's wrong." *Id.* at 747.

In the instant action, Plaintiffs seek only monetary damages in connection with their breach of fiduciary duty claim. *See* Compl. at 11 ("Plaintiffs pray for judgment against Defendants for each Count in an amount . . . believed to exceed $226,395.30"); Mot. at 24 (Plaintiffs "respectfully request summary judgment against [Viera] for the sum of $370,214.49"). As indicated above, Plaintiffs brought in their Complaint a claim for fraud and aiding and abetting fraud. *See* Compl. ¶¶ 32-39. However, it is clear that the claim, which, again, Plaintiffs do not raise in their Motion for Summary Judgment, fails the second prong of the essential/incidental analysis. That is, Plaintiffs' fraud claim is incidental because injuries resulting from the fraud as alleged in the Complaint are identical to the injuries from the alleged breach of fiduciary duty. *See* Compl. ¶¶ 39, 45 (claiming for each of Counts One and Two damages "believed to exceed $226,395.30"); *Spinnato*, 322 F. Supp. 3d at 397. Accordingly, as Vieira contends, the three-year statute of limitations period governs Plaintiffs' breach of fiduciary duty claim. *See* Vieira Opp. at 16.

Plaintiffs ground their breach of fiduciary duty claim in the alleged distributions of trust assets to Lehner and Barnard, as well as Vieira's failure to keep a record of Trust transactions. *See* Mot. at 19-22 ("By allowing [Lehner] to administer and receive money from the Trust, [Vieira] abandoned her fiduciary duty toward [Horan] and [Joffe]."). The transactions at issue

12

occurred on or before May 12, 2010. *See* Mot., Ex. 19, Dkt. 55-23; Mot., Ex. 21, Dkt. No. 55-25; Mot., Ex. 24, Dkt. No. 55-28; Mot., Ex. 25, Dkt. No. 55-29; Mot., Ex. 26 Dkt. No. 55-30. Other alleged abdications of Vieira's responsibilities as trustee also occurred during this period. That is, Plaintiffs argue that Vieira failed to sign the Trust's tax returns for 2004 through 2008. *See* Mot. at 21. Likewise, the addresses with which Plaintiffs take issue had been associated with the Trust's accounts since the times of the transactions or earlier. *See* Mot., Ex. 15 at 16-18, 22-23, 24-25, 27; Mot., Ex. 25; Horan Aff. ¶ 15. As Vieira's Opposition and Cross-Motion explains, "the period in contention runs from 2004 when [Vieira] was designated as third successor Trustee to 2010 when [Gill] died." Vieira Opp. at 17. Based on the undisputed facts, the three-year statute of limitations on Plaintiffs' breach of fiduciary duty claim against Vieira expired in 2013.

Plaintiffs' Reply does not directly address Vieira's arguments that Plaintiffs seek a purely monetary reward, triggering the three-year statute of limitations, or that their breach claims accrued in 2010 at the latest. Plaintiffs aver only that their breach of fiduciary duty claim against Vieira is timely pursuant to the open repudiation doctrine. *See* Pls.' Reply at 5-6. Specifically, Plaintiffs identify HNH's June 2017 letter as "an open repudiation of [Vieira's] fiduciary duty as a trustee." *Id.* at 6. In doing so, they neglect Vieira's argument that New York courts do not apply the open repudiation doctrine to breach of fiduciary duty claims that seek only monetary damages. *See* Vieira Opp. at 18-19. Instead, Plaintiffs cite cases applying the open repudiation doctrine under circumstances where equitable relief was sought. *See* Pls.' Reply at 5 (citing *Matter of Barabash*, 31 N.Y.2d 76 (1972) (proceeding for accounting); *Matter of Baird*, 871 N.Y.S.2d 755 (App. Div. 2009) (same); *Matter of Meyer*, 757 N.Y.S.2d 98 (App. Div. 2003)

13

(same); *Matter of Rodken*, 705 N.Y.S.2d 429 (App. Div. 2000) (same).[4] Plaintiffs' argument is unpersuasive. Given that Plaintiffs seek monetary relief, the open repudiation doctrine is inapplicable. *See Kleiman*, 2020 WL 7249441, at *12 (collecting cases holding open repudiation doctrine inapplicable to breach of fiduciary duty claims seeking only monetary relief, and finding open repudiation doctrine inapplicable to plaintiff's breach of fiduciary duty claim that seeks only monetary relief).

Likewise, the Court accepts Vieira's argument that the doctrine of equitable estoppel is inapplicable in the instant matter. Plaintiffs' Reply does not dispute this. Plaintiffs do not demonstrate that Vieira engaged in any affirmative act of wrongdoing or concealment that, if reasonably relied upon, would have delayed their bringing this action. Rather, in their depositions, both Joffe and Horan indicated a lack of contact with Vieira during, and, in Joffe's case, after, the relevant time period. Vieira Opp., Ex. D at 72-74, Dkt. No. 55-31 (stating Joffe "didn't even know who [Vieira] was" and that "[a]bsolutely nothing" happened between Gill's death in 2010 and the commencement of this action in 2018); Vieira Opp., Ex. H at 91-92, Dkt.

---

[4] In describing the law surrounding the open repudiation doctrine, Plaintiffs also cite *Matter of Steinberg*, 124 N.Y.S.3d 98 (App. Div. 2020). *See* Pls.' Reply at 5. In *Matter of Steinberg*, the Appellate Division applies the open repudiation doctrine to a breach of fiduciary duty claim that would otherwise be subject to a six-year statute of limitations, by reason of essential fraud. *Matter of Steinberg*, 124 N.Y.S.3d at 103-04. In determining that a six-year statute of limitations applies, the court cites *Cuisimano v. Schnurr*, 27 N.Y.S.3d 135, 139 (App. Div. 2016). *Matter of Steinberg*, 124 N.Y.S.3d at n.3. *Cuisimano* explicitly rejects an argument in favor of the open repudiation doctrine because it "only applies to claims for accounting or equitable relief." *Cuisimano*, 27 N.Y.S.3d at 139. While the court in *Matter of Steinberg* also, perhaps inconsistently, relies on precedent that states otherwise, *see Matter of Steinberg*, 124 N.Y.S.3d at n.3 (citing *N.Y. State Workers' Comp. Bd. v. Consol. Risk Servs., Inc.*, 4 N.Y.S.3d 680, 685-86 (App. Div. 2015)), this Court declines to extend the open repudiation doctrine beyond claims seeking equitable relief. The Eastern District of New York has adopted the "majority" view that the open repudiation doctrine applies only to breach of fiduciary duty claims that seek equitable relief and are subject to a six-year statute of limitations. *Kleiman v. Kings Point Capital Mgmt., LLC*, CV 18-4172 (SJF) (AKT), 2020 WL 7249441, at *12 (E.D.N.Y. Sept. 30, 2020), *adopted by* 2020 WL 7021648 (E.D.N.Y. Nov. 30, 2020). However, even if this were not the case, *Matter of Steinberg* is still distinguishable from the instant matter. As discussed, it involves a six-year statute of limitations and an essential fraud allegation, while the case at bar is subject to the three-year limitations period. *Matter of Steinberg*, 124 N.Y.S.3d at 103-04.

No. 55-31 (indicating Horan received an email from Vieira "stating that all the accounts had been closed, with the exception of that [Capital One] account" after Horan noticed the Capital One account belonging to the Trust and Horan's husband contacted Lehner); *see also* Horan Aff. ¶ 15 (indicating Horan came across the Trust's Capital One account in 2015).

Further, even if Plaintiffs were to contend that equitable estoppel applies on the grounds that Vieira had a fiduciary obligation to keep them informed, Plaintiffs neither assert nor show that they exercised the requisite reasonable care in ascertaining facts that might have led them to discover Vieira's alleged wrongs. In his deposition, Joffe denied ever attempting to learn what became of the Trust after he resigned as trustee. Vieira Opp., Ex. D at 72. Nor did he assert his rights under the Trust when Gill died or otherwise attempt to contact Vieira. *Id.* at 72-74. Similarly, Horan indicated in her deposition that she did not communicate with Joffe while he was trustee or with Vieira while Vieira was trustee. Vieira Opp., Ex. H at 91. Accordingly, Vieira is not equitably estopped from raising the statute of limitations defense to Plaintiffs' claim. *See Whitney Holdings, Ltd.*, 988 F. Supp. at 748 (finding equitable estoppel inapplicable where plaintiff "neither affirmatively pleaded diligence in bringing the action nor even asserted that it could not have discovered the facts underlying the claim").

Given the foregoing, the Court respectfully recommends finding Plaintiffs' breach of fiduciary duty claim against Vieira to be barred by the statute of limitations. Accordingly, the Court respectfully recommends Plaintiffs' Motion for summary judgment be denied as to their claim for breach of fiduciary duty and Vieira's Cross-Motion for summary judgment be granted as to that same claim. *See Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 274-75 (E.D.N.Y. 2014) (granting summary judgment for defendants and against plaintiffs, where plaintiffs' breach of fiduciary duty claim was time-barred).

15

### c. Count Three

Plaintiffs seek summary judgment on Count Three of the Complaint, which alleges Lehner aided a breach of fiduciary duty. *See* Compl. ¶¶ 46-49; Mot. at 24-26. Lehner, who is proceeding *pro se*, submitted a response in opposition to Plaintiffs' Motion. *See generally* Lehner Letter. The elements of a cause of action for aiding and abetting a breach of fiduciary duty are: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 688-89 (App. Div. 2015) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 169 (App. Div. 2003)).

The Court does not need to reach the merits of the parties' arguments. This Court has already recommended denying summary judgment on Plaintiffs' primary breach of fiduciary duty claim against Vieira. Accordingly, in the absence of a primary breach, Plaintiffs cannot establish that there is no dispute of material fact as to the first element of their aiding and abetting claim. *See Solomon*, 8 F. Supp. 3d at 274-75, 283 (dismissing aiding and abetting breach of fiduciary duty claim after finding underlying breach of fiduciary duty claim to be time-barred, at summary judgment phase). Further, "[w]here the primary violation is barred by the applicable statute of limitations, a claim for aiding and abetting this primary violation fails to state a claim." *Geren v. Quantum Chem. Corp.*, 832 F. Supp. 728, 737-38 (S.D.N.Y. 1993) (citing *Wood v. Wood*, 312 F. Supp. 762, 763 (S.D.N.Y. 1970)); *see also Balta v. Ayco Co., LP*, 626 F. Supp. 2d 347, 359 (W.D.N.Y. 2009) ("The statute of limitations for a claim of aiding and abetting a breach of fiduciary duty is the same limitations period that would apply to the underlying breach."). As the Count Two analysis indicates, Plaintiffs' claim for breach of fiduciary duty against Vieira was untimely. Accordingly, their claim against Lehner for aiding

16

Vieira's alleged breach of fiduciary duty is also untimely.  For these reasons, the Court respectfully recommends Plaintiffs' Motion for Summary Judgment be denied as to their claim against Lehner for aiding a breach of fiduciary duty.  *See Walski v. Forma*, 387 N.Y.S.2d 538, 539 (App. Div. 1976) (affirming denial of summary judgment where "record discloses that it is at least debatable whether the action was timely commenced").

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' Motion for Summary Judgment be DENIED and Vieira's Cross Motion for Summary Judgment be GRANTED.

## V. OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                  /s/
                                      Steven L. Tiscione
                                      United States Magistrate Judge
                                      Eastern District of New York

Dated: Central Islip, New York
         March 12, 2021